IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03014-PAB-STV

JUSTIN RUEB,

    Plaintiff,

v.

MOSES ANDRE STANCIL,
DEAN WILLIAMS, and
MARK FAIRBAIRN,

    Defendants.

___

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
___

Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). [#24] The Motion has been referred to this Court. [#25] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED.**

**I.     BACKGROUND**[1]

Plaintiff Justin Rueb, proceeding pro se, is currently in the custody of the Colorado Department of Corrections ("CDOC") and was incarcerated at all relevant times at the

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#9], which the Court accepts as true at this stage of the proceedings. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

1

Arkansas Valley Correctional Facility ("AVCF"). [#9 at 2]  According to the Amended Complaint, while at AVCF, Plaintiff exchanged artwork he created with fellow inmates in exchange for items including food, hygiene products, clothing, electronics, writing supplies, and art supplies.  [*Id*. at 13]  Pursuant to CDOC policy, however, prisoners are prohibited from "sell[ing], buy[ing], barter[ing], loan[ing], giv[ing], stor[ing], or otherwise exchang[ing] property without approval," and items exchanged without approval "will be deemed contraband and confiscated and disposed of."   [*Id*. at 16 (quoting CDOC Administrative Regulation ("A.R.") 850-06, titled "Offender Property Acquisition")] Pursuant to A.R. 850-06, in February 2023, AVCF staff searched Plaintiff's cell and seized the items he had obtained through such exchanges.  [*Id*.]  Plaintiff claims this seizure constituted an illegal Taking under the Fifth Amendment.[2]  [#9 at 4-8]

Plaintiff initiated the instant action on October 25, 2024.  [#1]  Plaintiff filed the operative Amended Complaint (the "Complaint") on February 28, 2025.  [#9]  The

---

[2] Plaintiff also challenges a separate, AVCF-specific policy concerning "prisoner art and hobby-craft activities."  [*Id.* at 11]  He alleges that in October 2021, Defendant Fairbairn modified CDOC regulations to allow inmates at AVCF to obtain permits and purchase art supplies for an "in-cell/room hobby program," provided the supplies were stored in a cardboard "hobby box" purchased from the prison hobby shop.  [*Id.* at 11-12]  Plaintiff alleges that in 2023, Defendant Fairbairn changed the policy, to require, by October 2023, inmates to mail their permitted art and hobby-craft supplies out of the facility at their own expense or destroy them.  [*Id.* at 12]  Plaintiff does not allege that the supplies he purchased have been confiscated; he asserts only that they "may be summarily seized-and-confiscated . . . any day now[.]"  [*Id.* at 17]  To the extent Plaintiff anticipates a future confiscation of art supplies under the modified hobby-craft policy—a confiscation that has not occurred in the two years since the modified policy went into effect—that claim fails because any such alleged deprivation has not yet occurred.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (quotation omitted)); *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) ("The threatened injury must be certainly impending and not merely speculative." (quotation omitted)).

2

Complaint asserts Fifth Amendment Takings and Fourteenth Amendment Due Process claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). [*See generally* #9] The Complaint seeks declaratory judgment and damages under 42 U.S.C. § 1983. [*Id.* at 24]

On May 5, 2025, Defendants filed the instant Motion, seeking dismissal of all of Plaintiff's claims. [#24] Plaintiff has responded to the Motion [#36] and Defendant has filed a reply [#44].

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a

facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the

4

elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C. Pro Se Pleadings

"[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

### III. ANALYSIS

Plaintiff brings suit against Defendants Stancil and Fairbairn in their official capacities and against Defendant Williams in his individual capacity.[3] [#9 at 2-3] Plaintiff is seeking relief under 42 U.S.C. § 1983 for "Unlawful 'Taking' of Property Without 'Just Compensation.'" [#9 at 4] He argues that he has a fundamental property interest in the property he has acquired and that CDOC regulations that allow for confiscation of contraband operate as an unconstitutional taking. [*Id*. at 6] He also appears to contend that these regulations violate procedural due process. [*Id*. at 7]

Defendants' Motion alleges Plaintiff's claims should be dismissed because: 1) they are barred by Eleventh Amendment immunity [#24 at 5-6]; 2) Plaintiff fails to state any

---

[3] The Complaint sues Defendant Fairbairn in his individual capacity [#9 at 3] but, in his Response, Plaintiff voluntarily dismissed his individual capacity claim against Defendant Fairbairn [#36 at 5].

5

plausible constitutional violation under the Takings or Due Process Clauses [*id*., at 6-12]; 3) Plaintiff does not establish the personal participation of any Defendant [*id*. at 12-13]; and 4) Defendants Williams and Fairbairn are entitled to qualified immunity. [*Id*. at 13-15]  The Court will address Defendants' arguments in turn, beginning with Plaintiff's official capacity claims.

### A. Official Capacity Claims

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2. v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).  "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011).  "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying . . . claim." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002) (quotation omitted).

Here, Plaintiff brings suit against Defendants Stancil and Fairbairn in their official capacities as CDOC officials.  [#9 at 2-3]  State officials sued in their official capacity are considered arms of the state, and such suits are treated as suits against the state itself.[4] *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Will v. Mich. Dep't of State Police*, 491

---

[4] Moreover, a Section 1983 action may only be brought against a person. *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

6

U.S. 58, 71 (1989) (concluding that a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself). So, because Defendants Stancil and Fairbairn are being sued in their official capacities, they may "assert Eleventh Amendment immunity as an 'arm' of the state in that [they] assume[ ] the identity of" the CDOC. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *see also Brackeen v. Brown*, No. 11-cv-01677-RBJ-KMT, 2013 WL 328937, at *4 (D. Colo. Jan. 8, 2013) ("Plaintiff's claims for monetary relief against the CDOC Defendants in their official capacities constitute claims against the Colorado Department of Corrections." (citing *Will*, 491 U.S. at 71), *report and recommendation adopted*, 2013 WL 329007 (D. Colo. Jan. 29, 2013). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief. *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).

Because the claims against them in their official capacity are effectively claims against the state, they are subject to Eleventh Amendment immunity unless an exception applies. There are two primary exceptions to the sovereign immunity doctrine: (1) Congress may abrogate a state's Eleventh Amendment immunity, or (2) a state may waive its sovereign immunity and consent to be sued. *Ruiz v. McDonnell*, 299 F.3d at 1181. Here, neither general exception to sovereign immunity applies: Section 1983 does not abrogate state sovereign immunity, *see Wood*, 414 F. App'x at 105 (*citing Will*, 491 U.S. at 71), and Plaintiff does not allege that the State of Colorado has waived its immunity or consented to this suit [*see generally* #9].

In his response, Plaintiff argues that he is only suing Defendants Stancil and Fairbairn for injunctive relief. [#36 at 5] And the *Ex parte Young* doctrine provides that,

7

Case No. 1:24-cv-03014-PAB-STV   Document 45   filed 11/05/25   USDC Colorado
pg 8 of 17

under appropriate circumstances, "[t]he Eleventh Amendment does not bar a suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law."  *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001) (discussing *Ex Parte Young*, 209 U.S. 123 (1908)).  But Plaintiff's Complaint does not seek any form of prospective relief.  [#9 at 24]  And the monetary damages sought by Plaintiff's Complaint are not permitted under *Ex parte Young*.  *See LaFavre v. Kansas ex rel. Stovall*, 6 F. App'x 799, 805 (10th Cir. 2001) ("*Ex [p]arte Young* does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable." (quotation omitted)).

Accordingly, the Court finds that the Eleventh Amendment bars Plaintiff's claims against Defendants Stancil and Fairbairn and the Court thus lacks subject matter jurisdiction over such claims.  The Court therefore respectfully RECOMMENDS that Plaintiff's claims against Defendants Stancil and Fairbairn be DISMISSED WITHOUT PREJUDICE.  *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) (dismissal for lack of subject matter jurisdiction is generally without prejudice).

## B. Individual Capacity Claims

### 1. Qualified Immunity Generally

Plaintiff brings suit against Defendant Williams in his individual capacity.  [#9 at 3] Defendant Williams argues he is entitled to qualified immunity on Plaintiff's claims.  [#24 at 13-15]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Once the defense of

qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id*. at 66 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted) (emphasis in original). And the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that

9

he or she faced." *Wesby*, 583 U.S. at 590 (quotation omitted).  The Court first addresses whether Plaintiff has sufficiently alleged a constitutional violation.

### 2. Fifth Amendment Takings Claim

Plaintiff claims that CDOC's policy prohibiting the exchange, bartering, or sale of property between inmates, and the resulting seizure of his property under that policy, effected a Taking of private property without just compensation in violation of the Fifth Amendment.[5]  [#9 at 4-22]  Defendants argue that the alleged confiscation does not amount to a Taking "for public use" as required by the Fifth Amendment, but rather constitutes a lawful exercise of the State's police power to regulate contraband within correctional facilities.  [#24 at 6, 8]  The Court agrees.

The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that the government may not take private property for public use without just compensation.  U.S. Const. amend. V.  "Courts have construed the text of the Takings Clause to mean that only those whose property has been taken for a public use are entitled to compensation." *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 581-82 (2019), *aff'd*, No. 2020-1107, 2021 WL 4486419 (Fed. Cir. Oct. 1, 2021) (quotation omitted)  The United States Supreme Court and the Tenth Circuit both distinguish between governmental

---

[5] Plaintiff relies heavily on *Knick v. Township of Scott*, 588 U.S. 180 (2019), for the assertion that "the Supreme Court requires government officials to pay for the cost of personal property that they are taking from someone before the taking occurs, or at precisely the moment that the taking occurs[.]" [#9 at 5]  Plaintiff's reliance on *Knick* is misplaced.  *Knick* held that property owners may bring Takings claims directly in federal court without first pursuing state court remedies; is did not expand the reach of the Takings Clause or convert police-power deprivations into compensable takings.  588 U.S. at 184-85.

10

actions taken pursuant to the power of eminent domain, which may give rise to a compensable taking, and actions taken pursuant to police power, which do not. *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) ("[W]e have previously equated the state's power to take[ ] property for public use with the state's power of eminent domain, as opposed to its police power." (quotation omitted)); *Hancock v. Harpe*, No. CIV-22-00976-JD, 2024 WL 4213605, at *2 (W.D. Okla. Sept. 17, 2024) ("A legitimate exercise of a state's police power is not a taking under the Fifth Amendment."). Consistent with these principles, courts have rejected Takings Clause claims based on property seized or destroyed pursuant to prison regulations. *See, e.g.*, *Mallet-El v. United States*, No. 21-cv-1263, 2021 WL 5833215, at *4-5 (Fed. Cl. Dec. 9, 2021) (prisoner who had his property confiscated did not have a Takings claim because "when the Government takes property pursuant to its police power, it does not constitute a taking for 'public use' that requires the Government to pay just compensation"); *Tormasi v. Hayman*, 443 F. App'x 742, 746 (3d Cir. 2011) (confiscation of inmate property as contraband pursuant to state statute and regulation is not a compensable Taking); *Hancock*, 2024 WL 4213605, at *2-3 (prisoner who was required by prison regulation to surrender his digital media player and digital music files and repurchase them from a new vendor did not have a valid Takings claim because he did not allege that the property was taken for public use).

Here, the alleged seizure of Plaintiff's bartered-for property occurred pursuant to CDOC policy, which prohibits inmates from exchanging or bartering property without

authorization and designates such items as contraband.  [#9 at 16]  Such enforcement of internal security and contraband regulations plainly fall within the State's police power.  *Mallet-El*, 2021 WL 5833215, at *5 (prison policies limiting the types of personal property that inmates are allowed to possess in their living areas and defining procedures for identifying and handling contraband "involve matters of the Government's police power[.]").  Because Plaintiff has not sufficiently alleged his property was taken for a "public use," the Takings Clause is not implicated[6] and Plaintiff therefore fails to allege a constitutional violation under the Fifth Amendment.[7]

Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED to the extent it seeks to dismiss Plaintiff's Fifth Amendment claim against Defendant Williams, in his individual capacity, and that this portion of the Claim be DISMISSED WITH PREJUDICE.[8]

---

[6] The only argument Plaintiff alleges related to the use of his confiscated property is that prison officials "often use seized electronic items . . . in their personal offices," "re-sell it on the internet," or "force a commissary purchase."  [#9 at 16 n.3]  The Court does not find these allegations sufficient to show public use as required under the Fifth Amendment, especially where Plaintiff has not alleged that any of his items that were seized were used in this manner.

[7] Because Plaintiff has failed to plead a constitutional violation against Defendant Williams, Defendant Williams is entitled to qualified immunity.  *Quinn*, 780 F.3d 998, 1004 (stating that to overcome a qualified immunity defense, a plaintiff must show that an official violated a statutory or constitutional right and that the right was clearly established).

[8] The Court recommends dismissal with prejudice because the defect cannot be cured by amendment.  *See Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000) (upholding dismissal with prejudice of plaintiff's claims based upon application of qualified immunity defense asserted by defendants in their motion to dismiss); *Watkins v. Donnelly*, 551 F. App'x 953, 957, 960-61 (10th Cir. 2014) (upholding dismissal with prejudice where plaintiff failed to allege a violation of a clearly established right).

### 3. Due Process Claim

Plaintiff also appears to assert that the confiscation of his bartered-for property in February 2023, and the potential confiscation of his art supplies under the revised AVCF hobby-craft policy, violated his rights to procedural due process under the Fourteenth Amendment. [#9 at 6-7, 16] Defendants argue Plaintiff's due process claim fails because: 1) he lacks a protected property interest in contraband; 2) the challenged CDOC policy at issue serves legitimate penological interests; and 3) Colorado provides adequate post-deprivation remedies. [#24 at 9-12]

The Due Process Clause protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted). The range of liberty interests protected by procedural due process is not infinite. *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972). A liberty interest may arise from two sources: "[1] the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or . . . [2] an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation omitted). An inmate must have a constitutionally protected interest in order to trigger due process protection. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981). Thus, before analyzing whether inmates were deprived of their property without due process of law, the Court must first determine whether there is a liberty or property interest that has been interfered with by

13

the State. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Roth*, 408 U.S. at 571.

An inmate's interest in possessing personal property while incarcerated is subject to extensive regulation. The Supreme Court has held that a deprivation resulting from prison conditions or regulations implicates a liberty or property interest only when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, CDOC A.R. 850-06 prohibits inmates from exchanging property without authorization and designates such items as contraband subject to confiscation. [#9 at 16] Regulations of this nature are "typical" features of prison administration and do not create a protected property interest under the Due Process Clause. *See Griffin v. Hickenlooper*, No. 11-CV-03380-REB-BNB, 2013 WL 1130439, at *6 (D. Colo. Jan. 4, 2013) ("[R]egulation of the type and quantity of personal property inmates may possess in their cells is not an atypical, significant hardship of prison life." (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)), *report and recommendation adopted*, 2013 WL 1117100 (Mar. 18, 2013), *aff'd*, 549 F. App'x 823 (Dec. 2013). Further, Plaintiff has not provided facts sufficient to show the deprivation of property posed an unusual hardship for him. See *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2011 WL 940803, at *9 (D. Colo. Mar. 16, 2011) (finding no due process violation where Plaintiff failed to provide evidence of unusual hardship from property restrictions).

Plaintiff's response cites to Article II, Section III of the Colorado Constitution which provides: "All persons have certain natural, essential, and inalienable rights, among which may be reckoned the right of . . . possessing and protecting property." [#36 at 16] From

14

this language, Plaintiff appears to argue that Colorado has created an expectation or interest for prisoners to have the same unfettered access to property that non-prisoners possess. [*Id.* at 16-23] But despite Article II, Section III, Colorado courts have applied the *Sandin* Court's atypical, significant hardship test to due process claims brought by prisoners. *Lawson v. Zavaras*, 966 p.2d 581, 584-86 (Colo. 1998); *Jenner v. Colo. Dep't of Corrs.*, No. 19CA0737, 2020 WL 14046319, at *2 (Colo. App. June 11, 2020). Thus, Article II, Section III does not create an expectation that prisoners have unfettered access to property and Plaintiff must still demonstrate that the contraband regulation creates an atypical, significant hardship. And because Plaintiff has failed to allege such a hardship, he has not alleged a constitutionally protected interest sufficient to trigger procedural due process protections.[9]

As a result, the Court finds that Defendant Williams is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.[10] The Court therefore RECOMMENDS that the Motion be GRANTED to the extent it seeks to dismiss Plaintiff's Fourteenth Amendment claim against Defendant Williams, in his individual capacity, and that this portion of the Claim be DISMISSED WITH PREJUDICE.[11]

    **C.**    **State Claims**

Plaintiff further mentions the Colorado Constitution as a basis for the allegations in his Complaint. [#9 at 6-7] To the extent Plaintiff brings state claims under the Colorado

---

[9] Because Plaintiff has failed to plead a constitutional violation against Defendants, Defendants are entitled to qualified immunity. *Quinn*, 780 F.3d at 1004.

[10] Because the Court finds that Defendant Williams is entitled to qualified immunity on Plaintiff's claims because no constitutional violation occurred, it need not address Defendants' remaining arguments in support of dismissal.

[11] The Court recommends dismissal with prejudice because the defect cannot be cured by amendment. *See Lybrook*, 232 F.3d at 1342; *Watkins*, 551 F. App'x at 957, 960-61.

15

Constitution, the Court recommends declining to exercise supplemental jurisdiction over those claims. A district court has discretion in deciding whether to exercise supplemental jurisdiction. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). The Tenth Circuit has explained:

> Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998).

*Id.* The refusal to exercise supplemental jurisdiction is especially apt where the interest of comity—leaving to the states to decide novel questions of state law—is present. *Birdwell v. Glanz*, 790 F. App'x 962, 964 (10th Cir. 2020). As a result, to the extent Plaintiff intended to bring state claims against Defendant, the Court RECOMMENDS declining supplemental jurisdiction over Plaintiff's state claims and DISMISSING WITHOUT PREJUDICE any such claims. *Id.* (indicating that state law claims should be dismissed without prejudice if supplemental jurisdiction is declined).

## IV.   CONCLUSION

For the reasons articulated above, the Court respectfully **RECOMMENDS** that:

(1) Defendants' Motion to Dismiss [#24] be **GRANTED** as to Defendants Stancil and Fairbairn and the claims against them in their official capacities be **DISMISSED WITHOUT PREJUDICE**;

(2) Defendants' Motion to Dismiss [#24] be **GRANTED as to Defendant Williams** and the claims against him in his individual capacity for monetary damages be **DISMISSED WITH PREJUDICE**; and

  (3) The district court **DECLINE** supplemental jurisdiction over Plaintiff's state law claims and those claims be **DISMISSED WITHOUT PREJUDICE**.[12]

DATED:  November 5, 2025      BY THE COURT:

                s/Scott T. Varholak
                Chief United States Magistrate Judge

---

[12] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).